## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ROBERT TASSIN (#117747)**                                 **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                       **NO. 15-0570-BAJ-EWD**

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 3, 2016.

                                                                 _/s/ Erin Wilder-Doomes_

                                                                  **ERIN WILDER-DOOMES**
                                                                  **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT TASSIN (#117747)                           CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                              NO. 15-0570-BAJ-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the Motions for Summary Judgment of defendants Burl Cain, Stephanie Lamartiniere, James M. Leblanc, John Rabalais and Jessie Burkes (R. Docs. 19 and 37). These motions are opposed.

*Pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA"), against former Warden Burl Cain, Ass't Warden Stephanie Lamartiniere, Secretary James M. LeBlanc, MSgt. John Rabalais, Sgt. Jessie Burkes and the State of Louisiana, through the Louisiana Department of Public Safety and Corrections, complaining that his constitutional rights were violated on September 4, 2014 when he was subjected to exposure to crop-dusting chemicals. Plaintiff further complains that he was thereafter provided with inadequate medical attention (both for the chemical exposure and for injuries sustained in an unrelated motor vehicle accident that occurred the same day)[1] and that the deficient medical care was the result of unconstitutional policies and practices implemented by prison personnel. Finally, Plaintiff complains that Defendants' actions have violated his federal statutory rights under the ADA and RA.

---

[1] Plaintiff is not apparently complaining in this proceeding regarding the referenced motor vehicle accident as such because he asserts in the Complaint that he has filed a separate lawsuit in state court against John Rabalais and Jessie Burkes for liability arising from that accident. *See* R. Doc. 1 at p. 2.

Defendants move for summary judgment relying upon the pleadings, Statements of Undisputed Facts, a certified copy of Plaintiff's pertinent medical records and administrative remedy proceedings, certified copies of State Employee Incident/Accident Investigation Forms dated September 4, 2014, a certified copy of an LSP Field Operations'/PE Daily Line Count form, a certified copy of an Unusual Occurrence Report dated September 4, 2014 (prepared by defendant Jessie Burkes), a certified copy of Department Regulation B-05-005 (Re: the prison's "Administrative Remedy Procedure"), and the affidavits of Dr. Randy Lavespere, Darren Cashio, James Summers and defendants John Rabalais and Jessie Burkes.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, Plaintiff alleges that on the morning of September 4, 2014 he was transported with two busloads of co-inmates to his assigned work site at the LSP Vegetable Processing Plant. Plaintiff alleges that upon arrival, he was instructed by defendant Rabalais to report next door to the "grading shead [sic]" that was overseen by defendant Burkes. According to Plaintiff, defendant Burkes assigned Plaintiff to work the conveyor belt that was situated under a shed roof but was otherwise open and exposed on all four sides. Plaintiff alleges that shortly after he began working, a crop-dusting airplane began spraying chemicals on crops located between the grading shed and the LSP main prison compound, and "the wind was blowing directly from the sprayed field into the open grading shead [sic]." In addition, at lunchtime, the two busloads of inmates were transported to and from the main prison compound to eat, and Plaintiff complains that during the transport, the buses were driven on a dirt road through the fields that had just been sprayed with chemicals. Plaintiff complains that he was an occupant in the second bus and was subjected to "a thick cloud of dust … flying in the air from the first bus." Finally, Plaintiff alleges that upon return to the Processing Plant after lunch, the two buses (driven by defendants Rabalais and Burkes) were involved in a collision in the parking lot and, as a result, the inmates were transported back to the main prison compound for medical evaluations. Plaintiff complains that the buses again traveled the dusty dirt road and that he was made to wait

for several hours in the hot bus while inmates were questioned and evaluated for potential injuries. According to Plaintiff, he was "soaked from sweat" when he finally arrived at the prison infirmary, at which time he allegedly complained of feeling ill and nauseated, and was given Pepto Bismal by a medical technician. The medical technician allegedly advised Plaintiff and other inmates that they would be scheduled for a consultation with a physician in the following week.

In addition to the foregoing, Plaintiff complains that he was provided with deficient medical care during the days and weeks following the events of September 4, 2014. Specifically, Plaintiff complains that there was no consultation scheduled with a physician the following week and that, because of his exposure to pesticides, he suffered profuse sweating, persistent coughing and "severe headaches and chest pain" for more than a week. According to Plaintiff, he sought emergency medical attention on three separate occasions, September 8, 16 and 17, 2014 but was only given a two-day, bed-rest duty status on September 17, 2014 and was not seen by a physician or prescribed antibiotics until 80 or 90 days after the incidents complained of. Plaintiff asserts that he made additional sick-call requests and that his attorney wrote letters and made telephone calls to the LSP medical staff on Plaintiff's behalf, but Plaintiff "withered down to skin and bones." In addition, Plaintiff complains that, as a result of the referenced bus accident, he suffered an aggravation of a pre-existing neck and back condition and that his complaints in this regard were also not addressed. Finally, Plaintiff complains that he submitted an administrative grievance to prison officials on November 27, 2014, requesting a medical consultation and diagnostic testing, "such as EKG, x-rays and blood work," but defendant Lamartiniere rejected this request, concluding that Plaintiff's treatment had been "consistent with guidelines set by LSP and [Plaintiff's] level of need," and that Plaintiff had failed to show that his health and safety concerns had not been addressed or that his care "has not met acceptable standards of care and reasonable accommodations." Plaintiff asserts that his deficient medical care was the result of "grossly

dificient [sic] policies and practices" implemented by prison personnel and that these policies and practices are attributable, at least in part, to a lack of funding and/or to a misappropriation of monies by defendants Cain and Lamartiniere.

In addressing Plaintiff's Complaint, the Court initially notes that Plaintiff has named the State of Louisiana, through the Louisiana Department of Public Safety and Corrections, as a defendant herein. Any claim asserted against the State, however, is barred by the Eleventh Amendment to the United States Constitution. Under the Eleventh Amendment, an unconsenting state is immune from any lawsuit seeking monetary damages or equitable relief brought in federal courts by her own citizens or by the citizens of other states. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for the deprivation of civil rights under color of state law. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Accordingly, absent consent or waiver, not here present, the State of Louisiana is immune from suit in federal court. This shield of immunity also extends to the Louisiana Department of Public Safety and Corrections as an arm or agency of the State. *See, e.g., Anderson v. Phelps*, 655 F. Supp. 560, 563-64 (M.D. La. 1985). *See also Lova v. Texas Dept. of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989). Accordingly, this aspect of Plaintiff's Complaint is subject to dismissal as a matter of law.

Turning to a consideration of Plaintiff's remaining claims, Defendants contend that defendants Burl Cain, James LeBlanc and Stephanie Lamartiniere and certain of Plaintiff's claims are subject to dismissal because Plaintiff has failed to exhaust available administrative remedies relative thereto as mandated by 42 U.S.C. § 1997e. Pursuant to this statute, Plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions. This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a

prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson, supra*, 385 F.3d at 516, *quoting Porter v. Nussle, supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id*.

Upon a review of Plaintiff's pertinent administrative grievances, *i.e.*, the grievances that he filed relative to the claims asserted in this proceeding, the Court concludes that Defendants' motion is well-taken in this regard and should be granted. Specifically, in Plaintiff's first grievance, dated November 27, 2014, Plaintiff complained of being exposed to crop-dusting chemicals on September 4, 2014 and of an alleged subsequent failure to address his resulting medical needs. In the second grievance, dated November 28, 2014, Plaintiff complained regarding the bus accident of the same date and of a similar failure to address his resulting injuries. In neither of these grievances did Plaintiff mention defendants Cain, LeBlanc or Lamartiniere, and in neither of these grievances did Plaintiff complain of any alleged deficient policies or practices implemented by these defendants. Nor did Plaintiff make any reference to the ADA or RA or suggest, as required for recovery under either statute, that he was discriminated against or denied participation in any prison program or service by reason of a qualifying disability, a prerequisite for recovery under those statutes. *See, e.g., Garrett v. Thaler*, 560 Fed. Appx. 375, 382 (5th Cir. 2014). As such, Plaintiff's complaints in the referenced grievances were only of an alleged

exposure to chemicals on a single date, of a motor vehicle accident occurring on the same date, and of alleged deficient medical care and treatment provided by LSP medical personnel – who are not named as defendants herein – during a 3-month period thereafter.  Consequently, the Court concludes that, in the absence of any assertion in the grievances that might have (1) suggested any wrongdoing on the part of defendants Cain, LeBlanc or Lamartiniere, (2) made reference to any alleged specific wrongful policies or practices regarding medical care at LSP, or (3) implicated the ADA or RA, Plaintiff's administrative grievances failed to provide sufficient notice to prison administrators that Plaintiff was attempting to assert such claims so as to "provide administrators with a fair opportunity under the circumstances to address the problem" now presented before this Court.  *See Johnson v. Johnson, supra*, 385 F.3d at 517.  Accordingly, Plaintiff's claims asserted against defendants Burl Cain, James LeBlanc and Stephanie Lamartiniere, his claims regarding deficient policies or practices at LSP, and his claims asserted under the ADA and RA in this proceeding are subject to dismissal for failure to exhaust administrative remedies relative thereto pursuant to 42 U.S.C. § 1997e.  *See, e.g., Riley v. Kazmierczak*, 497 Fed. Appx. 442, 443 (5th Cir. 2012) (dismissing ADA claims asserted by a prisoner because of a failure to exhaust administrative remedies).[2]

        Turning to a consideration of Plaintiff's claims asserted against the remaining defendants,

---

[2] From a substantive perspective, Plaintiff's claims arising under the ADA and RA would fare no better.  Specifically, courts have concluded that, when a "plaintiff's core complaint [is] incompetent treatment for his underlying medical condition, [s]uch a complaint does not state a claim for relief under the ADA because '[t]he ADA does not create a remedy for medical malpractice.'"  *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012), *quoting Moore v. Prison Health Services, Inc.*, 24 F. Supp. 2d 1164, 1168 (D. Kan. 1998), *affirmed*, 201 F.3d 448 (10th Cir. 1999).  *See also Nottingham v. Richardson*, 499 Fed. Appx. 368, 377 (5th Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners'").  The same finding is applicable under the RA because the basis for recovery under that statute is coextensive with the recovery obtainable under the ADA.  *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002).  Accordingly, inasmuch as the basis for Plaintiff's claim in this case is that prison officials have not properly or timely attended to his medical needs, his claims asserted under the ADA and RA are not properly before this Court.

John Rabalais and Jessie Burkes, the Court next agrees with Defendants' contention that Plaintiff has failed to state a viable claim against these defendants in their official capacity.  Specifically, 42 U.S.C. § 1983 does not provide a federal forum for a litigant seeking to recover monetary damages against a state official acting in an official capacity because such an official is not seen to be a "person" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity claims and made clear that a claim asserted against a state official in an official capacity for monetary damages is treated as essentially a claim asserted against the state and is therefore barred by the Eleventh Amendment.  *Id.* at 25.  Accordingly, Plaintiff's claim for monetary damages asserted against defendants Rabalais and Burkes in an official capacity is subject to dismissal.  In contrast, Plaintiff's claim for monetary damages asserted against these defendants in their individual capacity remains theoretically viable because a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose personal liability for actions taken by the official under color of state law, is not treated as a suit against the state.  *Id.* at 29.

With regard to Plaintiff's claims that are not barred by the Eleventh Amendment, defendants Rabalais and Burkes next assert that they are entitled to qualified immunity in connection with Plaintiff's claims.  Specifically, Defendants contend that Plaintiff has failed to sufficiently establish conduct on Defendants' part that rises to the level of a violation of Plaintiff's federal constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  Taking the facts as alleged in the light most favorable to Plaintiff,

the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to Plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis, the Court finds that defendants Rabalais and Burkes are entitled to dismissal of the claims asserted against him. Specifically, the Court concludes that Plaintiff has failed to come forward with evidence sufficient to overcome Defendants' assertion of the defense of qualified immunity.

Viewing Plaintiff's allegations in the light most favorable to him, his claim regarding exposure to crop-dusting chemicals on September 4, 2014 implicates his right, under the Eighth Amendment to the United States Constitution, to be free from cruel and unusual punishment in the

form of unconstitutional conditions of confinement. In this regard, the prohibition against cruel and unusual punishment requires that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (reiterating that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition must be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers, supra*, 174 F.3d at 720, *citing Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation had a "sufficiently culpable state of mind -- that is, the official must have been deliberately indifferent to the prisoner's health or safety." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013), *citing Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 2008); *Farmer v. Brennan, supra,* 511 U.S. at 837. Mere negligence is not a basis for liability under § 1983. *Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services*, 380 F.3d 872, 882-83 (5th Cir. 2004); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate claimant faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *See Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003), *citing Farmer v. Brennan, supra,* 511 U.S. at 847.

Applying the foregoing standard, the Court concludes that Plaintiff will be unable to prevail in connection with this case. Assuming that Plaintiff was in fact assigned to work in an open shed on the morning of a single date while a crop-dusting airplane was spraying chemicals nearby,

which Defendants deny,[3] there is nothing in the record to suggest that the incident resulted from anything more than mere negligence or mistake on the part of the defendant security officers. Plaintiff does not provide any information regarding the relative proximity of the crop-dusting operations, and he does not allege that he was routinely subjected to such conditions or that the exposure, if it occurred, was anything more than a few hours at most. Specifically, Plaintiff acknowledges that he reported for work on the referenced date at around 7:00 a.m., *see* R. Doc. 21-2 at p. 5, that he was then transported to the work site by bus, that he was later transported *back* to the prison for lunch, and that the referenced bus accident – which caused the cessation of work on that date – occurred before noon, *i.e.,* around 11:35 a.m., upon the prisoners' return from lunch. *See* R. Doc. 35 at p. 6. Thus, his alleged exposure was unquestionably short-lived. In addition, whereas Plaintiff complains of alleged additional exposure when he and the other inmates were transported to and from the main prison complex on dusty roads for lunch, it is clear that they were driven by security officers who were themselves subjected to the same conditions. Had the existing conditions been so obviously hazardous, it is reasonable to conclude that the defendant prison employees would not have willingly exposed themselves to the dangerous chemicals. Further, there is nothing in the record to suggest that any other inmates or security officers suffered harm or complained of symptoms resulting from the chemical exposure that allegedly occurred on September 4, 2014. Finally, even the plaintiff did not characterize his subsequent symptoms, of sweating and nausea, as being related to chemical exposure when he was later evaluated at the prison infirmary. On this showing, the Court finds that the obviousness of the risk was not such that a reasonable factfinder could conclude that either defendant Rabalais or Burkes was

---

[3] Defendants have attached as an exhibit to their Motion for Summary Judgment a Field Operations'/PE Daily Line Count form dated September 4, 2014, that reflects that no inmates were assigned to work in the grading shed on that date. *See* R. Doc. 19-8. While this document appears to refute Plaintiff's assertion relative to his work assignment and exposure, the Court expresses no opinion regarding the evidentiary weight attributable to this document.

deliberately indifferent to Plaintiff's health or safety on the referenced date or intentionally subjected Plaintiff to conditions that violated Plaintiff's constitutional rights. *See Sampson v. King*, 693 F.2d 566 (5th Cir. 1982) (overturning a finding of liability on the part of prison officials where an inmate complained of exposure to crop-dusting chemicals). *Cf., Lambert v. Cain*, 2011 WL 3876090 (M.D. La. Aug. 8, 2011) (no liability where inmate was exposed to dangerous fumes while working to repair a leaking gas pipe); *Barrett v. Casal*, 2007 WL 2746954 (S.D. Tex. Sept. 18, 2007) (no liability where inmate was assigned to demolition work in building which potentially contained asbestos and/or lead-based paint). Accordingly, the Court finds that defendants Rabalais and Burkes are entitled to summary judgment in connection with Plaintiff's claim in this regard.

In addition to the foregoing, Plaintiff asserts a claim regarding alleged deficient medical care after the events of September 4, 2014. This claim also does not survive judicial scrutiny. Pursuant to well-settled legal principles, an inmate who seeks to assert a claim regarding inadequate medical care under § 1983 must be able to show that appropriate medical was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether Plaintiff received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing standard, the Court finds that Plaintiff has failed to allege facts or produce evidence suggesting that prison officials have been deliberately indifferent to his serious medical needs. At best, his allegations, together with a review of his pertinent medical records by the Court, reflect Plaintiff's mere dissatisfaction with the care that was deemed appropriate for his complaints by health care professionals. He was admittedly seen and evaluated by a medical technician on the date of the incident complained of, September 4, 2014, and he thereafter sought and received additional medical attention on September 8, 16 and 17, 2014. Medication was prescribed for his apparent flu-like symptoms, and he was issued a two-day bed-rest duty-status on September 17, 2014. At no time do his medical records indicate that he complained of exposure to crop-dusting chemicals. Instead, it appears that on the date of the incident, he complained only that he "got nauseated while waiting on the bus," *see* R. Doc. 21-2 at p. 23, that he complained of "cold sym[ptoms]" on September 8, 2014, *see id.* at p. 20, that he complained of "cough/sweating" on September 16, 2014, *see id*. at p. 19, that he complained of "flu sym[ptoms]" on September 17, 2014, *see id*. at p. 18, and that he again complained of "flu like" symptoms on November 11, 2014, *see id*. at p. 15. If Plaintiff himself did not characterize his symptoms as being related to chemical exposure, it may not be seen to be deliberate indifference for prison officials to have failed to evaluate or treat him for such exposure. *See also* Exhibits attached to

Plaintiff's Opposition to Defendants' Motion for Summary Judgment, R. Doc. 35-1, which reflect that Plaintiff and his attorney addressed correspondence to the prison medical department in September and October, 2014 but made no mention of symptoms related to exposure to chemicals. Further, with regard to Plaintiff's back complaints, the medical records indicate that Plaintiff had a history of such complaints, that he continued to receive medical attention after the incident of September 4, 2014, that it was determined by prison personnel that the low-speed motor vehicle accident in the parking lot on that date would not likely have aggravated his condition, and that it was concluded that he was not in need of additional diagnostic testing.  At most, therefore, Plaintiff's complaints may be seen to reflect his mere disagreement with the evaluation and treatment provided by prison medical personnel, and such disagreement is not actionable under § 1983.

In addition to the foregoing, Plaintiff has not named as a defendant in this proceeding any physician or medical technician who allegedly failed to treat him or treated him incorrectly after the events of September 4, 2014.  Inasmuch as direct and personal involvement by a named prison employee is generally a prerequisite for liability under § 1983 and inasmuch as the named defendants in his proceeding are not alleged to have been involved with Plaintiff's medical care or treatment, there is no legal or factual basis for relief in connection with this claim.  S*ee Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability"); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).[4]

---

4    Although Plaintiff complains of the actions of defendant Lamartiniere in responding to Plaintiff's administrative grievance by rejecting his request for additional diagnostic testing for his back complaints, the law is clear that a prison official does not incur liability for the manner in which an administrative grievance is handled or addressed. *See Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005).

Finally, to the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, upon a consideration of the claims remaining before the Court, the Court further recommends that supplemental jurisdiction be declined in connection with Plaintiff's potential state law claims.

## **RECOMMENDATION**

It is recommended that the Court decline the exercise of supplemental jurisdiction over Plaintiff's potential state law claims and that Plaintiff's claim asserted against the Louisiana Department of Public Safety and Corrections be dismissed for lack of jurisdiction under the Eleventh Amendment.  It is further recommended that the Motions for Summary Judgment of defendants Burl Cain, James LeBlanc, Stephanie Lamartiniere, John Rabalais and Jessie Burkes (R. Docs. 19 and 37) be granted, (1) dismissing Plaintiff's ADA and RA claims and his claims asserted against defendants Cain, LeBlanc and Lamartiniere for failure to exhaust administrative remedies, and (2) dismissing Plaintiff's claims asserted against defendant John Rabalais and Jessie Burkes, with prejudice, upon a finding that these defendants are entitled to qualified immunity. It is further recommended that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 3, 2016.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**